**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HOUSING AUTHORITY OF NEW ORLEANS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1080** |
| **LANDMARK INSURANCE COMPANY** | **SECTION "B"(5)** |

<u>**OPINION**</u>

Before the Court are cross-motions for summary judgment. Landmark American Insurance Company (hereinafter "Landmark" or "Defendant") filed a motion for summary judgment on January 11, 2016. Rec. Doc. 12. Thereafter, Plaintiff, the Housing Authority of New Orleans (hereinafter "HANO" or "Plaintiff"), filed an opposition (Rec. Doc. 17), and Landmark filed a reply brief. Rec. Doc. 22. HANO also filed a motion for partial summary judgment on January 15, 2016. Rec. Doc. 14. Landmark then filed an opposition thereto. Rec. Doc. 16. For the reasons outlined below,

**IT IS ORDERED** that Landmark's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that HANO's motion for summary judgment is **DENIED.**

I.  <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

At issue in this litigation is the coverage of a Directors' and Officers' Liability Policy (hereinafter "the Landmark policy") issued by Landmark to HANO on November 1, 2005. Rec. Doc. 14-2 at

2. However, this case's roots go back to the aftermath of Hurricane Katrina.

   *1. History of this Litigation*

   In an earlier case before this section of the Court, Yolanda Anderson and additional plaintiffs sued HANO and the Department of Housing and Urban Development ("HUD"), among others, due to the demolition of the "the Big Four"[1] public housing developments in New Orleans after Katrina (hereinafter "the *Anderson* litigation").[2] On January 18, 2012, this Court dismissed that case after the parties reached a settlement agreement.

   On March 2, 2015, HANO filed the instant suit against Landmark in the Civil District Court for the Parish of Orleans alleging that it requested defense and indemnity from Landmark under the policy for the claims raised in the *Anderson* litigation. Rec. Doc. 1-4 at 1. On April 6, 2015, Landmark removed the action based on diversity of citizenship. Rec. Doc. 1. Subsequently, the case was transferred to this section of the Court because of its relationship to the *Anderson* litigation. Rec. Doc. 18.

   HANO's petition claims that Landmark acknowledged the request for defense and indemnity early on in the *Anderson* litigation and advised that it "would defend under reservation of rights." Rec. Doc. 1-4 at 1-2. Additionally, HANO claims that, in December of

---

[1] The Big Four included the B.W. Cooper, the C.J. Peete, the Lafitte, and the St. Bernard developments.
[2] *See Yolanda Anderson, et al. v. Alfonso Jackson, et al*, Civ. A. No. 06-3298.

2006, Landmark confirmed that there "appears to be coverage" for certain claims brought against HANO in the *Anderson* action. Rec. Doc. 1-4 at 2. However, approximately three years later, Landmark refused further coverage. Rec. Doc. 1-4 at 2. According to HANO, Landmark incorrectly "concluded that since it was not liable for any loss incurred by the insureds in connection with the lawsuit including defense expenses, it no longer had a duty to defend the lawsuits and that all defense costs were the responsibility of HANO." Rec. Doc. 1-4 at 3. Thereafter, HANO purportedly resolved the case in its entirety, without payment of settlement funds. Rec. Doc. 1-4 at 3. HANO's current suit seeks a judgment declaring that it was entitled to defense and indemnity from Landmark. Rec. Doc. 1-4 at 4. HANO also seeks reasonable damages, statutory penalties, attorney's fees, and costs. Rec. Doc. 1-4 at 4. Landmark contends that an allocation clause within the policy justified its limited defense of HANO in the *Anderson* suit.

   2. *The Landmark Policy*

   The policy contains two primary clauses that are relevant for the resolution of these motions: the "Duty to Defend" clause and the "Allocation" clause. The Duty to Defend clause in Section V.A. provides in relevant part:

   **Duty to Defend**

        It shall be the right and duty of the **Insurer**
        to defend any **Claim** against the **Insured** for
        which coverage applies under this policy. No

3

> **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent, such consent not to be unreasonably withheld.

Rec. Doc. 12-4 at 98. The Allocation clause addresses the amount of Defense Expenses to be allocated to the insurer based upon which parties and claims in the action are covered by the policy. Section V.F. of the policy provides:

> **Allocation**
>
> If both **Loss** covered under this policy and loss not covered under this policy are jointly incurred either because a **Claim** includes both covered and non-covered matters or covered and non-covered causes of action or because a **Claim** is made against both an **Insured** and any other parties not insured by this policy, then the **Insured** and the **Insurer** shall use their best efforts to fairly and reasonably allocate payment under this policy between covered **Loss** and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.
>
> If the **Insurer** and the **Insured** agree on an allocation of **Defense Expenses**, based on covered and non-covered matters or persons, the **Insurer** shall advance **Defense Expenses** allocated to covered **Loss**. If there is no agreement on an allocation of **Defense Expenses**, the **Insurer** shall advance **Defense Expenses** that the **Insurer** believes to be covered under this policy until a different allocation agreement is negotiated, arbitrated, or judicially determined.
>
> Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on

> account of such **Claim**, notwithstanding any
> prior advancement to the contrary. Any
> advancement or allocation of **Defense Expenses**
> on account of a **Claim** shall not apply to or
> create any presumption with respect to the
> allocation of other loss on account of such
> **Claim**.[3]

Rec. Doc. 12-4 at 100. In essence, these provisions attempt to limit, though not eliminate, the typically-broad duty to defend included within most general liability policies.[4]

## II.   THE PARTIES' CONTENTIONS

Landmark seeks summary judgment declaring: (1) that the policy contained a valid and enforceable allocation clause permitting the allocation of defense costs between covered and non-covered claims; and (2) that Landmark proposed, and HANO accepted, a fifty-fifty allocation of defense costs in accordance with the parameters of the allocation provision. Rec. Doc. 12 at 1. Landmark claims that the parties then implemented the fifty-fifty allocation. Rec. Doc. 12 at 1.

HANO opposes such a judgment on the grounds that: (1) allocation clauses are against Louisiana public policy and not

---

[3] Also relevant for interpreting the enforceability of these clauses are the definitions of **Loss** and **Defense Expenses**. "**Defenses Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom." Rec. Doc. 12-4 at 95. "**Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interests on a covered judgment) and **Defense Expenses**." Rec Doc. 12-4 at 96.

[4] The duty to defend refers to an insurer's obligation to defend suits against its insured. Typically, that duty "is broader than [the insurer's] liability for damage claims," meaning that an insurer may have a duty to defend even if there is ultimately no duty to indemnify the insured. *Am. Home Assurance Co. v. Czarniecki*, 230 So. 2d 253, 269 (La. 1969).

enforceable; (2) even if permissible under Louisiana law, the clause is so ambiguous so as to be unenforceable; and (3) even if it is enforceable, HANO never agreed to a fifty-fifty allocation. Rec. Doc. 17 at 1-2. HANO also seeks summary judgment in its favor, urging the Court to declare the allocation clause unenforceable as against Louisiana public policy. Rec. Doc. 14 at 1. HANO maintains that *Riley Stoker Corporation v. Fidelity and Guaranty Insurance Underwriters, Inc.*, 26 F.3d 581, 589 (5th Cir. 1994), supports the claim that Louisiana prohibits the allocation of defense costs between an insurer and an insured. Rec. Doc. 14-2 at 4.

In response to HANO's motion for partial summary judgment, and also in its original motion for summary judgment, Landmark contends that while Louisiana law does provide for a broadly-interpreted duty to defend, there is no bar to contractually limiting that duty. Rec. Docs. 12-1 at 3-4; 16 at 3-5.

## III. <u>LAW AND ANALYSIS</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002).

6

A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). The primary legal issue here is the enforceability of the Allocation clause. This Court will begin by addressing the alleged ambiguity.

**a. Whether the Policy is Ambiguous**

The parties do not contest that Louisiana substantive law governs this case under *Erie Railroad Company v. Thompkins*, 304

U.S. 64 (1938). Under Louisiana law, this Court's ultimate objective is to determine the common intent of the parties. LA. CIV. CODE. art. 2045. *See also Carrier v. Reliance Ins. Co.*, 99-2573, p. 11 (La. 4/11/00); 759 So. 2d 37, 43. The parties' intent concerning the extent of coverage is reflected in the words of the policy. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 93-0911 (La. 1/14/94), 630 So. 2d 759, 763. Courts should look to the plain and ordinary meaning of the words used, unless they have acquired a technical meaning. *Id*. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Id*.

Ambiguity must be resolved by "construing the policy as a whole." *Id*. "If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed . . . in favor of the insured. *Id*. at 764. However, courts should also interpret policies "to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." *Id*. (quoting *Trinity Industries, Inc. v. In. Co. of North America*, 916 F.2d 267, 269 (5th Cir. 1990)). This is known as the reasonable expectations doctrine. *Louisiana Ins. Guar. Ass'n*, 630 So. 2d at 764. Nevertheless, if the policy is clear and unambiguous, the court

8

must enforce it as written. *Id.* Contractual ambiguity is an issue of law. *Id.*

With these principles in mind, the Court now turns to the question of the extent of Landmark's duty to defend HANO under the policy. As an initial matter, most directors' and officers' policies ("D & O" policies) do not contain the broad duty to defend found in most general liability policies. *See* Julie J. Bisceglia, *Practical Aspects of Directors' and Officers' Liability Insurance— Allocating and Advancing Legal Fees and the Duty to Defend*, 32 UCLA L. REV. 690, 702-08 (1985). Therefore, under the reasonable expectations doctrine, the customs and usage of the industry instruct that HANO should not have expected the Landmark policy to include such a duty. Yet, this Court must still examine the text of the policy to determine the actual intent of the parties.

One potential source of confusion is that the policy's "Conditions" section contains both a "Duty to Defend" provision and an "Allocation" provision that requires proration of defense expenses. However, when read in the context of one another, the provisions do not present a conflict. First, the Duty to Defend clause states only that Landmark has "the right and the duty . . . to defend any **Claim** against the **Insured** *for which coverage applies under this policy*." Rec. Doc. 12-4 at 98 (emphasis added). By its own terms, the Duty to Defend clause does not require Landmark to defend any claim against HANO that could potentially

9

fall within the policy as does the typical duty to defend in a general liability policy, which is construed to be broader than the insurer's duty to indemnify. *See* 15 La. Civ. L. Treatise, Insurance Law and Practices § 7:2 (4th ed.). This reading of the Duty to Defend clause is confirmed by the Allocation clause.

The Allocation clause addresses situations in which a plaintiff brings a claim against the insured that includes covered and non-covered matters, covered and non-covered causes of action, or covered and non-covered parties. Rec. Doc. 12-4 at 100. In such a situation, the insured and the insurer are required to use their best efforts to allocate defense expenses to the covered and non-covered claims. Rec. Doc. 12-4 at 100. If they can agree on allocation, then the insurer must advance defense expenses allocated to covered "Loss." Rec. Doc. 12-4 at 100. If there is no agreement, then the insurer must advance defense expenses that the insurer believes to be covered under the policy. Rec. Doc. 12-4 at 100. Finally, any future determination regarding allocation will be applied retroactively, taking into account expenses already advanced. Rec. Doc. 12-4 at 100. Read together, Landmark's duty to defend is apparent. If the claim is covered, the insurer must provide a defense. If the claim is only partly covered, the parties need to work to allocate expenses. If the claim is not covered, then there is no duty to defend.

HANO's opposition asserts a laundry list of reasons for the contract's ambiguity. Rec. Doc. 17 at 2-8. Some are simply conclusory, while others are unconvincing. For one, HANO claims that the allocation clause itself cannot be understood. Rec. Doc. 17 at 5, 7-8. As demonstrated above, the clause provides a basic framework for allocating costs based on the extent of coverage. That argument lacks merit. HANO also claims that the definitions of "Loss" and "Defense Expenses" fail to address allocation, making the contract ambiguous. Rec. Doc. 17 at 6. This argument also fails because the conditions section addresses it clearly, rendering no need for further explanation in the definitions section. Finally, while poorly articulated, HANO's most cogent argument is that the insuring agreement requires Landmark to cover all Loss that HANO is obligated by law to pay. Rec. Doc. 17 at 7. Defense Expenses are included within the definition of Loss, leading HANO to contend that Landmark must pay for all Defense Expenses. As a result of that structure, HANO is correct that the allocation clause would have been more properly included as an exclusion. Yet, despite the imperfect structure of the agreement, this Court finds the intent of the parties clear: Landmark had the right to allocate defense expenses under the agreement. However, the question still remains whether such allocation is permissible under Louisiana law.

**b. Whether Allocation Clauses Such as the One at Issue Here are Against Louisiana Public Policy**

"To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court." *American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (citing *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). Here, however, the parties concede that they have found no Louisiana cases at any level that address the enforceability of such a clause. Rec. Docs. 12-1 at 5; 14-2 at 4. This Court has also been unable to identify any cases directly on point. Therefore, in the absence of such a decision, it is this Court's duty to make an "*Erie* guess." In other words, "it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." *American Int'l*, 352 F.3d at 260.

As Louisiana law governs, this Court must follow the Louisiana civilian methodology to resolve the issue, looking first to the authoritative sources of law under the Louisiana Civil Code—legislation and custom. LA. CIV. CODE art. 1. "Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante*, is merely a secondary law source." *American Int'l*, 352 F.3d at 261 (quoting *Transcon. Gas Pipe Line Corp.*, 953 F.2d at 988) (internal quotation marks omitted).

Accordingly, this Court muse use primary sources such as codes and statutes to initially guide its inquiry.

All conventional obligations or contracts are subject to the rules of Title IV of the Louisiana Civil Code. LA. CIV. CODE. art. 1915. However, as an insurance contract is a nominate contract, special rules under the Insurance Code also apply. *See* LA. CIV. CODE arts. 1914, 1916. Under the general rule for contracts, "[p]arties are free to contract for any object that is lawful, possible, and determined or determinable." LA. CIV. CODE art. 1971. As no provision within the Louisiana Insurance Code contradicts this general rule, Louisiana courts agree that this well-established principal also applies to insurance contracts: "an insurance contract is a voluntary agreement between the parties and . . . any provisions may be inserted in the contract as the parties see fit provided they are not repugnant to law or against public policy." *Clerk v. Conn. Fire Ins. Co.*, 203 So. 2d 866, 868 (La. App. 2 Cir. 1967). *See also Burgett v. Stuyvesant Life Ins. Co.*, 236 So. 2d 306, 308 (La. App. 4 Cir. 1970). Thus, this Court must determine whether any Louisiana sources recognize a public policy against contractual limitations on the broad duty to defend.

This Court has not identified any primary source of law in Louisiana that prohibits parties from limiting the duty to defend. Neither has HANO pointed to one. Instead, the Plaintiff directs this Court's attention to the case of *Riley Stoker Corporation v.*

13

*Fidelity and Guaranty Insurance Underwriters, Inc.*, 26 F.3d 581, 589 (5th Cir. 1994), as support for the proposition that allocation clauses are against public policy in Louisiana. Rec. Doc. 14-2 at 4-6. In *Riley Stoker*, the Fifth Circuit stated that "[u]nder Louisiana law, when an insurer has a duty to defend any claim asserted, the insurer must defend the entire action brought against its insured." *Riley Stoker*, 26 F.3d at 589. This concept has been reiterated over and over by Louisiana courts. *See* 15 La. Civ. L. Treatise, Insurance Law and Practices § 7:2 (4th ed.) and cases cited therein. However, the *Riley Stoker* Court did not go so far as to patently say that Louisiana public policy prohibits any attempt to contractually limit the duty to defend. *See Riley Stoker*, 26 F.3d at 589-90.

This Court and others have recognized that the obligation to defend is a contractual one, indicating it is not absolutely guaranteed by state policy. *See Chopp v. United Services Auto. Ass'n*, No. 86-5668, 1987 WL 9799, at *1 (E.D. La. Apr. 23, 1987); *Hartford Acc. & Indem. Co. v. United General Ins. Co.*, 855 F.2d 228, 231 (5th Cir. 1988). In *Pareti v. Sentry Indemnity Company,* 536 So. 2d 417, 421-23 (La. 1988), the Louisiana Supreme Court explicitly discussed Louisiana public policy as it relates to the duty to defend, albeit in a somewhat different context. The *Pareti* court discussed whether Louisiana public policy bars an unambiguous policy provision stating that the insurer's duty to

14

defend terminates upon payment of policy limits. *Id*. The court ultimately concluded that no such public policy exists in Louisiana, which suggests that Louisiana law would support other forms of contractual limitation concerning the duty to defend. *Id*. at 423.

Another important takeaway from *Pareti* is that the Louisiana high court looked to other jurisdictions as references for how to decide that *res nova* issue. *Id*. at 421-22. That serves as a significant indicator to this Court that the Louisiana Supreme Court would also look to other jurisdictions for guidance in deciding the *res nova* issue presently before this Court. Moreover, the United States Court of Appeals for the Fifth Circuit also recognized the relevance of cases from other jurisdictions in interpreting Louisiana insurance law, primarily because "the law of insurance is the same in Louisiana as other states." *Calcasieu-Marine Nat'l Bank of Lake Charles v. Am. Employers' Ins. Co.*, 533 F.2d 290, 295 (5th Cir. 1976) (quoting *Brown v. Life and Cas. Ins. Co. of Tenn*., 146 So. 332, 334 (La. App. 2 Cir. 1933)) (internal alterations omitted).

Notably then, the United States District Court for the Central District of California considered a very similar allocation clause to the one in question here and decided that the clause was enforceable under California state law. *Commercial Capital Bankcorp. Inc. v. St. Paul Mercury Ins. Co.*, 419 F. Supp.

15

2d 1173, 1177, 1182-85 (C.D. Cal. 2006). Although the structure of that policy differed, the rationale still applies here because the Landmark policy was similarly unambiguous in not providing a full duty to defend. As the Central District of California stated there:

> [R]ather than paying for premiums for the right to defense of all potentially covered claims, Plaintiff in this case paid (presumably lower) premiums for a lesser right. What Plaintiff agreed and bargained for was nothing more than the right to allocate Defense Costs to covered and uncovered claims and, if no such allocation could be agreed on, to have Defendant advance whatever Defense Costs it believed were covered subject to a later allocation determination. To require Defendant to advance all of Plaintiff's defense costs on a current basis despite [the allocation clause's] clear indication of the parties' contrary intent would give Plaintiff an un-bargained-for windfall.

*Id*. at 1182. The same result would transpire here if this Court found the allocation clause unenforceable: HANO would receive an un-bargained-for windfall.

Finally, the Louisiana Department of Insurance has, since this policy was issued, approved policies with nearly identical clauses to the allocation provision in this policy. *See* Rec. Doc 12-5. While the Louisiana Department of Insurance does not have final say over the validity of insurance contracts, the Louisiana Supreme Court has indicated that the position of the Commissioner of Insurance is persuasive in these matters, even if not dispositive. *Doerr v. Mobil Oil Corp.*, 2000-0947, p. 23 (La.

16

12/19/00); 774 So. 2d 119, 134. Due to the lack of primary legal sources identifying a public policy against allocation clauses, their acceptance in other jurisdictions, and their acceptance by the Louisiana Department of Insurance, this Court is convinced that the Louisiana Supreme Court would find the Allocation clause enforceable. Consequently, this Court's final inquiry is whether the parties came to an agreement on a fifty-fifty allocation as Landmark alleges.

### c. Whether the Parties Came to An Agreement on Allocation

Landmark cites to a string of emails between its agents and HANO's in-house counsel as well as HANO's defense counsel in the *Anderson* litigation for the purpose of demonstrating that the parties agreed to a fifty-fifty allocation of defense costs in that matter. Rec. Doc. 12-6. HANO contends that the parties never reached such an agreement and that, in any event, only HANO's Executive Director could agree to terms and contracts, not its attorneys. Rec. Doc. 17 at 9. The emails cited by Landmark certainly discuss a fifty percent allocation of defense costs. *See* Rec. Doc. 12-6 at 11, 32, 34. However, while HANO's attorneys' emails demonstrate their belief that HANO agreed to a fifty-fifty allocation, no email from any HANO agent ever explicitly accepts that arrangement on behalf of HANO. *See, e.g.*, Rec. Doc. 12-6 at 32, 34, 41. More importantly, Landmark has failed to specifically allege, let alone show, that any of the HANO attorneys

17

communicating in those emails had actual or apparent authority to bind HANO to a fifty-fifty allocation. In fact, there is no evidence that anyone with authority to bind HANO actually accepted such an agreement. Consequently, there remains a genuine issue of material fact as to whether the parties ever reached an allocation agreement.

IV.   **CONCLUSION**

For the reasons discussed above,

This Court finds that the Landmark policy is unambiguous with regard to Landmark's duty to defend HANO. Further, the Court finds that the allocation clause limiting that duty is not prohibited by Louisiana public policy. Finally, the Court finds that there remains a genuine issue of material fact as to whether HANO ever agreed to a fifty-fifty allocation of defense costs. Accordingly,

**IT IS ORDERED** that Landmark's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that HANO's motion for summary judgment is **DENIED.**

New Orleans, Louisiana, this 29th day of February, 2016.

UNITED STATES DISTRICT JUDGE